STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. LOIS SANDERS AND DONALD SANDERS, DEFENDANTS-RESPONDENTS.

Argued March 31, 1987—Decided July 9, 1987.

*Catherine A. Foddai,* Deputy Attorney General, argued the cause for appellant (*W. Cary Edwards,* Attorney General of New Jersey, attorney).

*John R. Grele,* Assistant Deputy Public Defender, argued the cause for respondent (*Alfred A. Slocum,* Public Defender, attorney).

The opinion of the Court was delivered by

STEIN, J.

In this appeal, we consider whether a trial court must set bail immediately after sentencing in order to preserve the State's right to appeal a sentence pursuant to *N.J.S.A.* 2C:44–1f(2). The sentencing court in this case stayed defendants' sentences for ten days as required by the statute, but declined to entertain applications for bail until after the State filed its notice of appeal. The Appellate Division, in dismissing the State's ap-

peal, concluded that the failure to establish bail resulted in defendants' partial execution of their sentences, and that any increase in their sentences on appeal would therefore violate federal and state double jeopardy protections. *State v. Sanders*, 212 *N.J.Super.* 599, 606–07 (1986). In our view, the State's right to contest a sentence under *N.J.S.A.* 2C:44–1f(2) does not depend on the availability of bail at the time of sentencing. Accordingly, we reverse the judgment of the Appellate Division. Moreover, because the sentences imposed in this case violate the guidelines contained in the Code of Criminal Justice, we remand the matter to the Law Division for resentencing in accordance with this opinion.

## I

In June 1985, defendants entered *retraxit* pleas of guilty to charges of conspiracy, *N.J.S.A.* 2C:5–2; theft by deception of property exceeding $75,000 in value, *N.J.S.A.* 2C:20–4; promoting gambling, *N.J.S.A.* 2C:37–2; and two counts of making gifts to public servants, *N.J.S.A.* 2C:27–6b.[1] Defendants' indictment on these charges arose out of their involvement in Co-Op Investments, a complex "pyramid" scheme that they operated with several other individuals in California, New Jersey, and Illinois.[2] Potential investors paid $625 in order to participate and were promised potential returns of up to $35,-000. Through the use of complicated charts and fictionalized names, defendants ensured that they would keep most of the funds invested by the participants. According to defendant Donald Sanders, over 2,000 New Jersey residents "invested"

---

[1]Under the Code, theft by deception and conspiracy are second-degree offenses. *N.J.S.A.* 2C:20–2b(1), 2C:5–4a. The remaining charges to which defendants pled guilty are third-degree offenses. *N.J.S.A.* 2C:37–2b(2), 2C:27–6c.

[2]Several of defendants' co-conspirators are presently being tried on charges stemming from the Co-Op Investments pyramid scheme. *See State v. Curry*, 105 *N.J.* 532 (1986) (granting the State's motion for leave to appeal).

more than $1,000,000 in Co-Op Investments. *See State v. Sanders, supra,* 212 *N.J.Super.* at 602–03.

Defendants were sentenced on August 1, 1985. At the sentencing hearing, the court found as aggravating factors the nature and circumstances of the offense, *N.J.S.A.* 2C:44–1a(1); [3] the fact that defendants' conduct constituted organized criminal activity, *N.J.S.A.* 2C:44–1a(5); defendants' prior criminal records (both had been convicted of similar offenses in California and Illinois), *N.J.S.A.* 2C:44–1a(6); and the need to deter defendants and others from violating the law, *N.J.S.A.* 2C:44–1a(9). In mitigation, the court found that the victims in this case facilitiated the crime, *N.J.S.A.* 2C:44–1b(5); that defendants were willing to perform community service, *N.J.S.A.* 2C:44–1b(6); that they had led law-abiding lives for a substantial period before commission of the subject crimes, *N.J.S.A.* 2C:44–1b(7); that they were likely to respond to probationary treatment, *N.J.S.A.* 2C:44–1b(10); and that they had displayed a willingness to cooperate with law-enforcement authorities, *N.J. S.A.* 2C:44–1b(12). Noting that the aggravating factors outweighed the mitigating factors, the court sentenced defendants to five years probation with concurrent 364–day county-jail terms as a condition of the probationary sentence. The court also imposed fines totalling $45,000, ordered each defendant to perform 400 hours of community service, and required each to pay ·$125 in Violent Crimes Compensation Board penalties.

Upon pronouncement of sentence, the trial court stated that the sentences would not become final for ten days to permit the State to file an appeal. Ms. Sanders' attorney then inquired

---

[3]The court emphasized the importance of this aggravating factor, observing that "[t]here were an enormous number of people involved," and that "[t]he amount of money collected which went into Co-Op Investments was substantial."

whether his client would be released from prison during those ten days.[4] The court responded:

> No. I would say the status quo stays for ten days. * * * And if [the State is] going to appeal, they better do it quickly, before next week, and * * * when they do, you may make application for bail at that time.

The State filed its notice of appeal eight days later, on August 8, 1985. A motion for bail pending appeal was heard on August 13, and an order setting bail at $5,000 was filed on August 20; the order provided that defendants would not be permitted to post 10% cash bail.[5] The Appellate Division modified Lois Sanders' bail on August 22, 1985, releasing her on her own recognizance. On August 21, Donald Sanders was returned to California for an appearance in connection with a pending prosecution, and was ultimately released on a recognizance bond.

The Appellate Division dismissed the State's appeal.[6] 212 *N.J.Super.* at 601. The court observed that *N.J.S.A.* 2C:44–1f(2) does not specify when bail must be set after imposition of sentence. *Id.* at 606. Noting that *Rule* 2:9–3(d) mandates the granting of bail pending an appeal by the State, the panel interpreted the statute and the Rule to require that bail be established immediately:

---

[4]Neither defendant posted pre-trial bail. As a result, Lois Sanders was incarcerated 337 days and Donald Sanders 245 days through the date of the sentencing hearing. The judgment of conviction provided that both defendants would receive credit for the time served.

[5]Both defendants' docket sheets indicate a reduction of bail to $5,000 on August 13, 1985. Defendant contends that these entries were erroneous, and that bail was not set until the trial court's order was filed on August 20. The Appellate Division concluded that a bail hearing was conducted on August 13. 212 *N.J.Super.* at 604. In the absence of any evidence to the contrary in the record before us, we adopt the Appellate Division's findings on this issue.

[6]Defendants cross-appealed, contending that their fines were illegal because the trial court failed to "take into account the financial resources of the defendant and the nature of the burden that * * * payment will impose." *N.J.S.A.* 2C:44–2c. The Appellate Division held that this claim was without merit, 212 *N.J.Super.* at 607; defendants do not contest the validity of this ruling in the present appeal.

Unless the stay is granted and bail established immediately the purpose of a stay loses its meaning—which is to preclude execution of the sentence. [*Id.*]

The Appellate Division concluded that defendants' incarceration between August 1, 1985, and August 13, 1985, resulted in the partial execution of their sentences, and that any attempt to increase these sentences on appeal would violate defendants' double jeopardy rights. *Id.* at 607.

## II

Analysis of the issue presented in this case requires an understanding of the procedures applicable to State appeals under *N.J.S.A.* 2C:44–1f(2). The statute provides:

In cases of convictions for crimes of the first or second degree where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands, the court may sentence the defendant to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted. If the court does impose sentence pursuant to this paragraph, or if the court imposes a non-custodial or probationary sentence upon conviction for a crime of the first or second degree, such sentence shall not become final for 10 days in order to permit the appeal of such sentence by the prosecution.

As the statute makes clear, when a sentencing court imposes a probationary sentence on a first- or second-degree offender, or where it "downgrades" a sentence pursuant to *N.J.S.A.* 2C:44–1f(2), that sentence does not become final for ten days in order to permit the State to contest the sentence imposed. *N.J.S.A.* 2C:44–1f(2); *see State v. Williams,* 203 *N.J.Super.* 513, 517 (App.Div.1985). Strict compliance with the terms of the statute is required; failure to perfect an appeal within the ten-day period will result in dismissal of the State's appeal. *See State v. Watson,* 183 *N.J.Super.* 481, 484 (App.Div.1982).

Once the State has filed a notice of appeal, *see R.* 2:5–1, a defendant's sentence is subject to the continuing stay of *Rule* 2:9–3(d). The Rule provides:

(d) Stay Following Appeal by the State. Notwithstanding paragraphs (b) and (c) of this rule, execution of sentence shall be stayed pending appeal by the State pursuant to N.J.S.A. 2C:44–1f(2). Whether the sentence is custodial or non-custodial, bail pursuant to Rule 2:9–4 shall be established as appropriate under the circumstances. A defendant may elect to execute a sentence stayed

by the State's appeal but such election shall constitute a waiver of his right to challenge any sentence increase on grounds that execution has commenced.[7]

Bail may be granted during the pendency of an appeal "only if it appears that the case involves a substantial question * * * and that the safety of any person or of the community will not be seriously threatened if the defendant remains at large." *R.* 2:9-4.[8]

We view *Rule* 2:9-3(d) as inapplicable to the ten-day period accorded the State to perfect its appeal. This conclusion flows from the title of the rule—"Stay *Following* Appeal by the State" (emphasis provided)—as well as from its language. Accordingly, it would be improper to admit a defendant to bail until the State has commenced its appeal under *N.J.S.A.* 2C:44-1f(2).

---

[7] As recognized by the Appellate Division, *Rule* 2:9-3(d) was amended in 1981 to make its stay and bail provisions mandatory. Prior to the amendment, the rule provided in pertinent part that "the requirement that defendant comply with the term of a sentence *may* be stayed * * * pending appeal by the State" and that "bail pursuant to Rule 2:9-4 *may* be established as appropriate * * *." (Emphasis added.) The amendment was intended to preserve the State's statutory appeal right against double jeopardy claims founded on our holding in *State v. Ryan,* 86 *N.J.* 1, *cert.* denied, 454 *U.S.* 880, 102 *S.Ct.* 363, 70 *L.Ed.*2d 190 (1981). *See* "Commentary, New Rule Amendments," 108 *N.J.L.J.* 153, 163 (1981).

The Rule also permits a defendant to elect to serve a sentence otherwise stayed by the State's appeal but provides that such an election constitutes a waiver of the right to challenge a sentence increase on double jeopardy grounds. *R.* 2:9-3(d). In *State v. Williams, supra,* 203 *N.J.Super.* at 518, a panel of the Appellate Division held that a defendant must be advised at sentencing of the applicability of the election and waiver provisions of *Rule* 2:9-3(d). In view of our conclusion that the Rule is inapplicable until the State perfects its appeal, it is self-evident that this advice to a defendant is not required until the bail hearing is held.

[8] Although defendants in this case were admitted to bail, *see supra* at 615–616, *Rule* 2:9-4 also permits the denial of bail pending appeal by the State, with the result that a defendant could remain incarcerated even though his sentence has been stayed pending resolution of the State's appeal. Clearly, such defendants would receive credit for time served against their ultimate sentences. Nevertheless, in such cases the interests of justice require that the State's appeal be resolved on an expedited basis.

■ Our interpretation of the relationship between *N.J.S.A.* 2C:44–1f(2) and *Rule* 2:9–3(d) frames the fundamental question before us: whether a defendant's incarceration for as long as ten days while the State perfects its appeal bars a subsequent sentence increase on double jeopardy grounds.[9] Several general principles inform our analysis. Foremost among these is that the fifth amendment's double jeopardy clause, *U.S. Const.* amend. V, cl. 2, is intended to "protect[ ] against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 *U.S.* 711, 717, 89 *S.Ct.* 2072, 2076, 23 *L.Ed.*2d 656, 665 (1969); *see United States v. DiFrancesco*, 449 *U.S.* 117, 129, 101 *S.Ct.* 426, 433, 66 *L.Ed.*2d 328, 340 (1980); *Ex parte Lange*, 18 *Wall.* 163, 173, 21 *L.Ed.* 872, 878 (1873).[10] This protection against multiple punishments may be implicated when a state seeks an increase in a defendant's sentence on appeal. *See United States v. DiFrancesco, supra*, 449 *U.S.* at 121 & n. 4, 101 *S.Ct.* at 429 & n. 4, 66 *L.Ed.*2d at 335 & n. 4; *State v. Roth, supra*, 95 *N.J.* at 343. And while the double jeopardy clause is not an absolute bar to a state's power to appeal a lenient sentence, *United States v. DiFrancesco, supra*, 449 *U.S.* at 132, 101 *S.Ct.* at 434–35, 66 *L.Ed.*2d at 342, once it has been found to apply, " 'its sweep is absolute,' " *id.* at 131, 101 *S.Ct.* at 434, 66 *L.Ed.*2d at 342 (quoting *Burks v.*

---

[9]We concur with the Appellate Division that pretrial bail was discharged upon pronouncement of sentence, and therefore could not continue during the period between sentencing and the State's appeal. 212 *N.J.Super.* at 605–06; *cf. State v. Midland Ins. Co.*, 167 *N.J.Super.* 419, 422 (App.Div.) (surety held to be liable on a recognizance bond until the final determination of a matter, which "does not occur until 'a dismissal on the merits, an acquittal or upon sentence after conviction.' ") (quoting *State v. Rice*, 137 *N.J.Super.* 593, 601 (Law Div. 1975), aff'd o.b., 148 *N.J.Super.* 145 (App.Div.1977)), certif. denied, 81 *N.J.* 354 (1979).

[10]Our analysis of the double jeopardy clause of the New Jersey Constitution, *N.J. Const.* of 1947, art. I, para. 11, has followed the principles of the fifth amendment double jeopardy clause because of the concededly broader protections embodied in the federal constitutional guarantee. *State v. Roth*, 95 *N.J.* 334, 344 (1984).

*United States,* 437 *U.S.* 1, 11 n. 6, 98 *S.Ct.* 2141, 2147 n. 6, 57 *L.Ed.*2d 1, 9 n. 6 (1978)).

The Supreme Court addressed the constitutionality of the government's right to appeal a sentence in *United States v. DiFrancesco, supra,* 449 *U.S.* 117, 101 *S.Ct.* 426, 66 *L.Ed.*2d 328. At issue in *DiFrancesco* was a provision in the Organized Crime Control Act permitting the United States to appeal a sentence imposed on a "dangerous special offender." *Id.* at 118–19, 101 *S.Ct.* at 427–28, 66 *L.Ed.*2d at 334–35. Observing that "the pronouncement of sentence has never carried the finality that attaches to an acquittal," *id.* at 133, 101 *S.Ct.* at 435, 66 *L.Ed.*2d at 343, the Court concluded that the statute did not violate the fifth amendment guarantee against multiple punishments, *id.* at 139, 101 *S.Ct.* at 438–39, 66 *L.Ed.*2d at 347. Because the defendant was charged with knowledge of the statute's appeal provisions, he could not have had an "expectation of finality" in his sentence until all avenues of appellate review were exhausted. *Id.* at 136, 101 *S.Ct.* at 437, 66 *L.Ed.*2d at 345. The statute therefore did not expose him to the harassment and risk of multiple prosecutions that the double jeopardy clause was intended to prevent. *Id.; see also State v. Roth, supra,* 95 *N.J.* at 344 (adopting the "expectation of finality" analysis in determining the constitutionality of *N.J. S.A.* 2C:44–1f(2)).

■ As we understand *DiFrancesco,* the touchstone of the double jeopardy analysis lies in the expectation of finality that a defendant vests in his sentence. *See State v. Rodriguez,* 97 *N.J.* 263, 270 (1984). In *Rodriguez,* we discussed a trial court's power to resentence a defendant when one of the counts for which he was originally sentenced has been dismissed on appeal. We concluded that an increase in defendant's sentence on remand would not violate constitutional principles:

> Since the underlying substantive convictions in this case were themselves the subject of attack on an appeal in which defendant sought their modification, no legitimate expectation of finality could be invested in the underlying convictions or the sentences related to them. [*Id.* at 271.]

■   Applying the *DiFrancesco* analysis to the present case, we conclude that these defendants could not legitimately have expected that their sentences were final when pronounced. As with the statute at issue in *DiFrancesco*, the Code of Criminal Justice expressly provides for prosecutorial appeal of a lenient sentence. *See N.J.S.A.* 2C:44–1f(2). Defendants are charged with notice of the terms of this provision. *See State v. Williams, supra,* 203 *N.J.Super.* at 513; *State v. Giorgianni,* 189 *N.J.Super.* 220, 227 (App.Div.), certif. denied, 94 *N.J.* 569 (1983). Moreover, the trial court explicitly advised defendants that their sentence would be stayed to permit the State to appeal. *See supra* at 615–616. In light of the plain language of the statute and the court's comments at the sentencing hearing, it is unlikely that defendants' incarceration for the brief period in question could have affected their understanding that the State's statutory right of appeal might result in enhancement of the sentences imposed.

Defendant contends that our decision in *State v. Ryan, supra,* 86 *N.J.* 1, requires dismissal of the State's appeal. We disagree. In *Ryan,* we held that a defendant who has begun to serve his sentence may not be exposed to an increase in its term. *Id.* at 10. The defendant in *Ryan* had moved for modification of his three-to-five year sentence after serving approximately six months in custody, and was placed on probation; when he violated the terms of the probationary sentence, the trial court resentenced him to a five-to-seven year prison term. *Id.* at 3–4. We concluded that the enhanced sentence violated defendant's double jeopardy rights, because "defendant *had no reason to expect that his original sentence was not final* at the time it was imposed and his imprisonment began." *Id.* at 10 (emphasis added). Unlike the defendant in *Ryan,* these defendants were *precluded* from serving their sentences by the stay contained in *N.J.S.A.* 2C:44–1f(2). Moreover, they had ample notice from the terms of the statute and from the trial court's remarks that their sentences would not be final at the time they were pronounced.

Nor do we perceive any unfairness in requiring defendants' incarceration for the brief period between sentencing and the time of the State's appeal. We note that defendants did not challenge their underlying convictions; had they done so, motions for bail pending appeal could have been considered immediately by the trial court. *R.* 2:9–4. Additionally, should the State succeed in overturning defendants' sentences on appeal, defendants will receive credit against the modified sentence for the time served. Conversely, if the State's appeal is rejected, the terms of the original sentence will continue in effect, and defendants will still receive credit for their post-conviction incarceration.

Finally, we view our holding today as compelled by the burden that a contrary ruling would impose on sentencing courts. In order to comply with the Appellate Division's decision, sentencing courts might be induced to grant bail upon pronouncement of sentence in cases where the State is empowered but ultimately declines to invoke its statutory right of appeal, resulting in brief bail releases for convicted defendants whose sentences are never contested. We are convinced that such a procedure is beyond the scope of the requirements of *Rule* 2:9–3(d).

In sum, we conclude that the right of appeal provided by *N.J.S.A.* 2C:44–1f(2) does not violate the fifth amendment's double jeopardy clause, despite the fact that a defendant may remain incarcerated for up to ten days while the State perfects its appeal. The clear and unambiguous terms of the statute remove any expectation of finality that a defendant may vest in his sentence; its stay provisions ensure that he will not begin serving that sentence until the State's notice of appeal is filed. Of course, bail must be established by the trial court in accordance with *Rule* 2:9–3(d) within a reasonable period after the State's appeal is taken. Because we view the brief period between the State's notice of appeal and the proceeding to determine bail as a reasonable period of time, we reverse the

judgment of the Appellate Division, and reinstate the present appeal.

### III

█ Examination of the record adduced at the sentencing hearing leads us to conclude that a remand for resentencing is required in this case. As noted above, each of the defendants pled guilty to both second- and third-degree offenses. *See supra* at 613 n. 1. Under the Code, a second-degree offense carries a presumptive term of seven years. *N.J.S.A.* 2C:44–1f(1). The trial court may increase or decrease that sentence within the statutory range for second-degree offenses, which is five to ten years. *N.J.S.A.* 2C:43–6a(2). In the case of third-degree offenses, the presumptive term is four years, *N.J.S.A.* 2C:44–1f(1), while the authorized range of sentence is three to five years, *N.J.S.A.* 2C:43–6a(3).

█ The trial court in this case sentenced each defendant to five years probation, with a 364–day prison term as a condition of sentence. We agree with the Appellate Division that these sentences violated the provisions of the sentencing statute. 212 *N.J.Super.* at 606. Absent a finding of circumstances analogous to the "serious injustice" standard of *N.J.S.A.* 2C:44–1d, the trial court was required to impose a term of imprisonment within the statutory range for a second-degree offense. *See State v. O'Connor,* 105 *N.J.* 399, 411 (1987); *State v. Hodge,* 95 *N.J.* 369 (1984).[11] Because the sentencing transcript does not

---

[11]As the Appellate Division observed, the crimes to which defendants pled guilty occurred before the September 1981 amendment to the Code that enacted the presumption of imprisonment in its current form. 212 *N.J.Super.* at 606. The presumption now requires that all persons convicted of first- or second-degree offenses be sentenced to a term of imprisonment, unless the trial court "is of the opinion that [defendant's] imprisonment would be a serious injustice which overrides the need to deter such conduct by others." *N.J.S.A.* 2C:44–1d. In *State v. Hodge, supra,* we declined to apply the presumption retroactively, but concluded that the structure and purpose of the Code's sentencing provisions required that trial courts, when imposing sentence for

reveal that the sentencing court considered imprisonment inappropriate—in fact, the court concluded that incarceration was necessary—we remand this case for resentencing in accordance with the Code's sentencing guidelines.

The judgment of the Appellate Division is reversed, and the matter remanded to the Law Division for disposition in accordance with this opinion.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Affirmance*—None.

---

pre–1981 offenses, consider the presumptive terms and ranges set forth in *N.J.S.A.* 2C:44–1f(1) and 2C:43–6a. 95 *N.J.* at 374, 376. Similarly, we do not intend to suggest that the "serious injustice" standard of *N.J.S.A.* 2C:44–1d is to be applied retroactively to the present case. Nevertheless, we are of the view that sentencing courts, in addressing pre–1981 crimes, retain a slightly broader discretion not to impose a sentence of imprisonment with respect to first- or second-degree crimes than is the case with sentences for post–1981 offenses. In exercising this discretion, a court may look to the same factors that it would consider in determining whether the presumption of incarceration has been overcome in a post–1981 case.